Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| BANCO POPULAR DE PUERTO RICO<br><br>Peticionaria<br><br>v.<br><br>LUIS MANUEL VÁZQUEZ NEGRÓN, ahora la Sucesión de Luis Vázquez Negrón t/c/c Luis Manuel Vázquez Negrón compuesta por y OTROS<br><br>Recurridos | TA2026CE00489 | *Certiorari*<br>Procedente del Tribunal de Primera Instancia, Sala de GUAYNABO<br><br>Caso Núm.:<br>GB2023CV00499<br><br>Sobre:<br>Cobro de Dinero – Ordinario, Ejecución de Hipoteca, Propiedad Residencial |

Panel integrado por su presidenta la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Mateu Meléndez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 29 de mayo de 2026.

El 21 de abril de 2026, el Banco Popular de Puerto Rico (en adelante, BPPR o el peticionario) presentó ante este Tribunal de Apelaciones una solicitud de *Certiorari Civil*. Mediante esta, nos solicita la revocación de la *Resolución* emitida el 17 de marzo de 2026, y notificada el 19 de marzo de 2026, por el Tribunal de Primera Instancia, Sala Superior de Guaynabo (en adelante, TPI). Por virtud del aludido dictamen, el TPI declaró No Ha Lugar la *Moción en Solicitud de Sentencia* presentada en el caso por el peticionario con fecha del 19 de noviembre de 2025.

Estudiado el legajo apelativo, en consideración al derecho aplicable que más adelante exponemos, **expedimos** el auto de *certiorari* solicitado y **revocamos** la determinación recurrida.

**I.**

El pleito ante nos tuvo su génesis el 8 de junio de 2023, cuando BPPR presentó una *Demanda* sobre cobro de dinero y ejecución de hipoteca en

contra del Sr. Luis Manuel Vázquez Negrón (en adelante, Sr. Vázquez Negrón) y Luis Vázquez Investment, Inc. (en adelante LVI).[1] Allí, alegó que, el 21 de noviembre de 2005, el Sr. Vázquez Negrón suscribió un pagaré por la suma principal de $92,000.00, más intereses ascendientes a 6.625% anual y demás créditos accesorios por endoso. En esta misma fecha, según alegado, el señor Vázquez Negrón otorgó una hipoteca en garantía del pago que grava la finca cuya descripción registral transcribimos a continuación:

> ---"DESCRIPCION REGISTRAL: SOLAR de terreno ubicado en el Barrio Santa Rosa del término municipal de Guaynabo, Puerto Rico, con un área superficial de 1,037.54 metros cuadrados, equivalentes a DOS MIL CUARENTA milésimas de cuerda. En el solar marcado con el número 10 en el plano de notificación; colinda por el Norte, Este y Oeste, con terrenos para para uso público y por el Sur, una parcela marcada con el número 9. En dicho solar hay una edificación, la cual se describe a continuación. Edificación: Dos niveles donde el primer piso tiene garage para un automóvil, un medio baño y un área de laundry, no tiene lozas y es piso de cemento, con una puerta al norte que da acceso a escalera de 12 escalones con descanso que conduce a la segunda planta. La segunda planta consta de 3 habitaciones con sus closets todos con puertas de metal. La salacomedor-cocina, tiene puerta de cristal 'sliding door' que da un balcón de lozas negras de 11 pies de largo por 4 de ancho, mirando al Este. Su sala-comedorcocina se dispone en espacio abierto, siendo la sala-comedor de 11 pies de ancho por 18 de largo y mirando al lado Oeste, pero continuo un espacio para cocina de 8 por 5 pies hay un gabinete de pared y otro donde irá la estufa. Esta área no tiene equipos a excepción de los gabinetes antes mencionados. De la sala se conduce a las habitaciones y al solo baño del inmueble por un pasillo de 11 pies de largo por 3 1/2 de ancho. El baño no tiene bañera, es una regadera ducha y un inodoro con 4 pies de ancho y 6 de largo; con una media ventana tipo 'Miami'. Los pisos de la parte superior están en lozas italianas negras y así los bordes combinando con los pisos. Hay en dicha planta 3 habitaciones; la más amplia tiene 10 pies por 11 pies y su closet con puertas de metal y tiene 4 ventanas tipo 'Miami'; las habitaciones número 2 y 3 de 10 pies por 11 pies con closet y abanico de techo y de 7.5 por 8 pies, respectivamente. Algunas ventanas están protegidas por rejas pero no en su totalidad. Esta construcción es totalmente en cemento y hormigón, vivienda para una sola familia". Inscrita al folio 173 del tomo 1330 de Guaynabo, finca #18977 del Registro de la Propiedad de Guaynabo.
>
> Dirección física de la propiedad: Short Hills, SR 836, Barrio Santa Rosa, Guaynabo, Puerto Rico.

La *Demanda* establece que el 29 de agosto de 2012, se modificó la hipoteca de la siguiente manera: en cuanto al principal que será $91,070.33 con intereses al 2.50% anual del pago mensual 1 al 60; luego al 3.50% anual

---

[1] Véase, Sistema Unificado de Manejo y Administración de Casos del TPI (SMAC TPI); Entrada Núm. 1.

del pago 61 al 72; luego al 4.50% anual del 73 al 84; al 5.50% anual del pago 85 al 86; luego al 6.50% anual del pago 97 al 108 y luego al 6.625% anual del pago 109 al 140, su fecha de vencimiento será el 1ro de septiembre de 2052. Según se indica en la *Demanda*, esta modificación se encuentra inscrita en el Registro de la Propiedad y el BPPR es el acreedor del instrumento negociable con derecho a exigir el cumplimiento del instrumento objeto de ejecución. Finalmente, allí también se alegó que los demandados incurrieron en incumplimiento del contrato del préstamo hipotecario por haber dejado de pagar las mensualidades desde el 1 de julio de 2020. Como remedio, el BPPR solicitó al tribunal que dictara sentencia en la que proveyera:

a) que se le adeudaba la suma principal de $81,018.56, más intereses sobre dicha suma al tipo convenido de 5.500% por ciento anual desde el día 1 de junio de 2020, hasta su completo pago, más las primas de seguros estipuladas en la escritura de hipoteca, contribuciones de la propiedad, de aplicar, más recargos por demora, más los intereses devengados y la cantidad estipulada de $9,200.00 para costas, gastos y honorarios de abogado;

b) que la escritura de constitución de hipoteca está inscrita en el Registro de la Propiedad correspondiente la parte demandante tiene un gravamen hipotecario de primera hipoteca sobre el inmueble anteriormente descrito como garantía a las sumas que se declaren por sentencia;

c) que se ordene al alguacil de este Tribunal que proceda a vender en pública subasta la propiedad antes descrita al mejor postor libre de cargas y gravámenes, de clase alguna y luego del pago de costas, gastos y honorarios de abogado en que se incurra como consecuencia de este pleito, que del producto de la venta, se proceda a pagar a la parte demandante una suma hasta el monto de su reclamación. De ser el producto de la venta insuficiente para el pago de la reclamación, se dicte la correspondiente sentencia en deficiencia por el balance en descubierto; y

d) que se dictara cualquier otra providencia que en derecho proceda.

Tras varios incidentes procesales que no son meritorios pormenorizar, el 19 de julio de 2024, el Sr. Vázquez Negrón instó su *Contestación a Demanda*. En esta, admitió haber suscrito un pagaré por la

cantidad de $92,000.00 al 6.625% de interés, así como que otorgó la correspondiente escritura de hipoteca para garantizar la deuda del pagaré sobre la propiedad descrita en la *Demanda.* A su vez, acepta que la propiedad objeto del litigio le pertenecía a LVI. No obstante, negó haber modificado o autorizado la modificación del pagaré firmado el 21 de noviembre de 2005, así como haber recibido comunicaciones relacionadas con el cobro de la deuda.

También, y al mismo tiempo, presentó una *Reconvención* en la cual alegó que el pagaré fue modificado unilateralmente por el Peticionario. Es decir, que el BPPR realizó una novación sin su consentimiento, lo que resultó en una novación no consentida de la deuda y la liberación de toda obligación sobre el pagaré original. Añadió entonces que, habiéndosele incluido negligentemente en la acción de epígrafe, por no ser el deudor del pagaré modificado, ha tenido que incurrir en gastos innecesarios para su defensa. Por esto y demás razones, reclamó haber sufrido daños y perjuicios y solicitó al TPI que declarara el pagaré original cancelado por novación, declarara la nulidad del pagaré modificado por falta de su consentimiento, declarara la escritura de modificación insuficiente para tener rango de derecho real y le ordenara al BPPR compensarle por los daños y perjuicios sufridos en una cantidad no menor de $50,000.00, así como por daños punitivos en una suma no menor de $25,000.00; la imposición de intereses legales y el pago de honorarios de abogado.

Por su parte, el 26 de julio de 2024, la parte codemandada LVI presentó su propia *Contestación a Demanda*, en la cual también incluyó alegaciones sobre una reconvención. En esta última, informó que, el 23 de octubre de 2006, adquirió el dominio de la propiedad objeto de la demanda por cesión. Agregó que, el 29 de agosto de 2012, el Sr. Vázquez Negrón como su presidente compareció a la escritura de *Modificación de Hipoteca* con el único propósito de presentar su anuencia a la modificación de los

términos. Siendo así, sostuvo que LVI no suscribió ningún documento en calidad de deudor y que, al modificarse la obligación accesoria, se extinguió la obligación originaria. Finalmente, solicitó al TPI que declarase extinta la obligación principal y el pagaré modificado por falta de consentimiento del deudor.

En respuesta, el 14 de agosto de 2024, BPPR instó una *Solicitud de Desestimación de Reconvención* donde alegó que la misma dejó de exponer una reclamación que justificara la concesión de un remedio al amparo de la Regla 10.2 (5) de las de Procedimiento Civil. Insistió en que, el 29 de agosto de 2012, los Recurridos suscribieron una escritura de *Modificación de Hipoteca y Cancelación Parcial de Pagaré.* Además, indicó que fue el Sr. Vázquez Negrón quien solicitó la modificación al banco. Por lo que, las alegaciones sobre nulidad del pagaré van en contra de los propios actos del deudor.

Es menester señalar que el 9 de octubre de 2024, BPPR instó una *Moción en Sustitución de Parte y Acompañando Demanda Enmendada, Moción en Solicitud de Autorización para Emplazar por Edictos, Moción en Solicitud de Interpelación Judicial y Moción en Solicitud de Orden al Registro Demográfico.* En esta, informó que según información recibida el Sr. Vázquez Negrón había fallecido, por lo que solicitó que este fuera sustituido en el pleito por su sucesión, quienes en dicho momento eran de nombre desconocido. Peticionó también que se le permitiera emplazar por edicto a dichos herederos desconocidos, que a estos se les requiriera aceptar o repudiar la herencia y que se ordenara al Registro Demográfico a expedir el correspondiente certificado de defunción. El 11 de septiembre de 2024, el foro primario dictó *Orden* mediante la cual declaró Ha Lugar autorizó la sustitución de parte. Además, mediante varios dictámenes emitidos en la misma fecha, ordenó al Registro Demográfico a expedir el certificado de defunción de Luis Vázquez Negrón t/c/c Luis Manuel Vázquez Negrón sin

necesidad de ulterior orden o documento, autorizó el emplazamiento por edicto de la sucesión del Sr. Vázquez Negrón y les ordenó a notificar si aceptaban o repudiaban la herencia del causante.[2]

Luego de varias incidencias, el 19 de noviembre de 2025, BPPR presentó una *Moción en Solicitud de Sentencia*. En esta, y en cuanto los herederos Héctor Vázquez y Evelyn Negrón, argumentó que estos fueron emplazados de conformidad con las Reglas de Procedimiento Civil sin que sometieran alegación responsiva, por lo que procedía que se les anotara la rebeldía. Igualmente, y en cuanto al Héctor Cotto Rodríguez y LVI, arguyó que no existía controversias de hechos materiales que impidieran la disposición del caso mediante la vía sumaria. Específicamente, estableció que no existía controversia sobre los siguientes hechos:

1. El día 21 de noviembre de 2005, el Sr. Vázquez Negrón otorgó ante el Notario Enrique N. Vela Colón, testimonio número 24683k, un pagaré a favor de RF Mortgage and Investment Corporation o a su orden, por la suma principal de $92,000.00 más intereses desde esa fecha hasta el pago total del principal a razón de 6.625% de interés anual sobre el balance adeudado ("el pagaré o instrumento"). Además el pagaré provee para pagar recargos por demora equivalentes a 5.000% de la suma de aquellos pagos con atrasos en exceso de 15 días calendarios de la fecha vencimiento; y una cantidad equivalente a $9,200.00 por concepto de costas, gastos y honorarios de abogados en caso de reclamación judicial. *Refiérase al pagaré que se une como ANEJO VI y a la declaración jurada que se une como ANEJO IV*.

2. Para garantizar el pago de dicho pagaré se constituyó una hipoteca voluntaria mediante la escritura número 916 otorgada el día 21 de noviembre de 2005 ante el Notario Enrique N. Vela Colón ("la escritura de hipoteca"). *Refiérase a la escritura de hipoteca que se une como ANEJO II y a la declaración jurada que se une como ANEJO IV*.

3. La escritura de hipoteca grava el bien inmueble que se describe a continuación ("la finca o propiedad"). *Véase la escritura de la hipoteca que se une como ANEJO II y la certificación registral que se une como ANEJO I*.

   DESCRIPCION REGISTRAL: SOLAR de terreno ubicado en el Barrio Santa Rosa del término municipal de Guaynabo, Puerto Rico, con un área superficial de 1,037.54 metros cuadrados, equivalentes a DOS MIL CUARENTA milésimas de cuerda. En el solar marcado con el número 10 en el plano de notificación; colinda por el Norte, Este y Oeste, con terrenos para para uso

---

[2] Posteriormente, la parte peticionaria sometió *Moción en Sustitución de Parte y Acompañando Tercera Demanda Enmendada* informó que los miembros de la sucesión del Sr. Vázquez Negrón era Michael Cotto Rodríguez (Cotto Rodríguez), viudo y sus padres Héctor Vázquez y Evelyn Negrón.

público y por el Sur, una parcela marcada con el número 9. En dicho solar hay una edificación, la cual se describe a continuación. Edificación: Dos niveles donde el primer piso tiene garage para un automóvil, un medio baño y un área de laundry, no tiene lozas y es piso de cemento, con una puerta al norte que da acceso a escalera de 12 escalones con descanso que conduce a la segunda planta. La segunda planta consta de 3 habitaciones con sus closets todos con puertas de metal. La salacomedor-cocina, tiene puerta de cristal sliding door que da un balcón de lozas negras de 11 pies de largo por 4 de ancho, mirando al Este. Su sala-comedorcocina se dispone en espacio abierto, siendo la sala-comedor de 11 pies de ancho por 18 de largo y mirando al lado Oeste, pero continuo un espacio para cocina de 8 por 5 pies hay un gabinete de pared y otro donde irá la estufa. Esta área no tiene equipos a excepción de los gabinetes antes mencionados. De la sala se conduce a las habitaciones y al solo baño del inmueble por un pasillo de 11 pies de largo por 3 1/2 de ancho. El baño no tiene bañera, es una regadera ducha y un inodoro con 4 pies de ancho y 6 de largo; con una media ventana tipo 'Miami'. Los pisos de la parte superior están en lozas italianas negras y así los bordes combinando con los pisos. Hay en dicha planta 3 habitaciones; la más amplia tiene 10 pies por 11 pies y su closet con puertas de metal y tiene 4 ventanas tipo Miami; las habitaciones número 2 y 3 de 10 pies por 11 pies con closet y abanico de techo y de 7.5 por 8 pies, respectivamente. Algunas ventanas están protegidas por rejas pero no en su totalidad. Esta construcción es totalmente en cemento y hormigón, vivienda para una sola familia. Inscrita al folio 173 del tomo 1330 de Guaynabo, finca #18977 del Registro de la Propiedad de Guaynabo.

4. La finca o propiedad antes descrita consta inscrita al folio 220 del tomo 407 de Guaynabo, Registro de la Propiedad de Guaynabo, finca número 18977. *Refiérase a la certificación registral que se une como* ***ANEJO I***.

5. La hipoteca consta inscrita al folio 173vto. del tomo 1330 de Guaynabo, Registro de la Propiedad de Guaynabo, finca número 18977. *Refiérase a la certificación registral que se une como* ***ANEJO I***.

6. La antes descrita hipoteca fue modificada mediante la escritura número 252 otorgada en San Juan, el 29 de agosto de 2012, ante el Notario Público Antonio R. Pavía Vidal, se la siguiente manera: En cuanto al principal que será $91,070.33 con intereses al 2.50% anual del pago mensual 1 al 60; luego al 3.50% anual del plago 61 al 72; luego al 4.50% anual del 73 al 84; al 5.50% anual del pago 85 al 96; luego al 6.50% anual del pago 97 al 108 y luego al 6.625% anual del pago 109 al 140, su fecha de vencimiento será el 1ro de septiembre de 2052. *Véase la escritura de modificación de la hipoteca que se une como* ***ANEJO V***.

7. La hipoteca fue constituida para garantizar (a) el repago de la deuda evidenciada por el pagaré (b) una suma equivalente a $9,200.00 para cubrir cualquier otro adelanto que se haga en virtud de la escritura de hipoteca (c) una suma equivalente a $9,200.00 para cubrir intereses en adición a los garantizados por ley y (d) una suma equivalente a $9,200.00 para cubrir costas, gastos y honorarios de abogado. *Véase la escritura de la hipoteca que se une como* ***ANEJO II***.

8. La parte demandante es la parte con derecho a exigir el cumplimiento del instrumento. Véase el pagaré que se une

como ANEJO VI del cual surge un endoso en blanco. *Refiérase la declaración jurada que se une como **ANEJO IV**.*

9. La parte demandada ha dejado de pagar las mensualidades vencidas desde el día 1 de junio de 2020 y en su consecuencia ha incurrido en el incumplimiento de su obligación de pagar en plazos mensuales el principal y los intereses según acordados. *Refiérase al pagaré que se une como **ANEJO VI** de donde surge la obligación de hacer pagos mensuales y la declaración jurada que se une como **ANEJO IV** de donde surge el incumplimiento.*

10. La demandada de epígrafe adeuda al demandante las siguientes sumas: $81,018.56 en principal, más los intereses al 6.625% anual desde el día 1 de junio de 2020, así como los intereses acumulados y por acumularse a partir de esa fecha y hasta el total y completo repago de la deuda; cargos por demora equivalentes al 5.000% de todos aquellos pagos con atrasos en exceso de 15 días calendarios de la fecha de vencimiento hasta el total y completo repago de la deuda; $9,200.00, es decir, el 10% sobre el principal del pagaré hipotecario, para el pago de costas, gastos y honorarios de abogado como suma pactada a dichos efectos en el pagaré. *Refiérase a la declaración jurada que se une como **ANEJO IV**.*

11. BPPR ha realizado gestiones para obtener el pago de las sumas reclamadas resultando tales gestiones infructuosas por lo cual ha declarado vencida la totalidad de la deuda. *Refiérase a la declaración jurada que se une como **ANEJO IV**.*

Basándose en la inexistencia de controversia material de hechos, el peticionario arguyó que la parte demandada- como deudor solidario y en virtud de las obligaciones asumidas por esta en el pagaré y la escritura de hipoteca- venía obligada a satisfacer todas las sumas de dinero adeudadas, según reclamadas. De otra parte, y en cuanto a las reconvenciones sometida en su contra, tanto por el Sr. Vázquez Negrón como por LVI, hizo alusión al escrito en solicitud de desestimación que presentó frente a tales reclamaciones. Al igual que hizo en aquella ocasión, planteó que estas no justificaban la concesión de remedio alguno en su favor.

Por otro lado, el 30 de enero de 2026, el Sr. Michael Cotto Rodríguez (en adelante, Sr. Cotto Rodríguez)[3] instó una *Moción en Oposición a la Solicitud de Sentencia Sumaria* en donde sostuvo que existen controversias materiales que impiden la disposición del caso. Específicó que de los

---

[3] El 21 de enero de 2025, BPPR presentó una *Moción en Sustitución de Parte y Acompañando Tercera Demanda Enmendada* de conformidad con la Regla 22.1 de las de Procedimiento Civil. 32 LPRA Ap. V, R. 22.1.

propios documentos sometidos por BPPR surgen interrogantes sobre la exigibilidad de la obligación reclamada, la legitimación activa del peticionario, el efecto jurídico de una escritura de modificación otorgada sin la comparecencia del deudor original y el alcance de cualquier responsabilidad frente a un heredero que comparece a beneficio de inventario. Además, reiteró que se debe auscultar si se obtuvo un consentimiento válido en la escritura de *Modificación de Hipoteca*. Por otro lado, destacó que el proceso de descubrimiento de prueba no había culminado, lo que abonaba al rechazo de una resolución sumaria del caso.

Así pues, al oponerse a la resolución sumaria del caso, identificó que existían las siguientes controversias:

1. Si BPPR era el tenedor legítimo del pagaré que pretendía ejecutar, conforme a los requisitos de la Ley de Transacciones Comerciales de Puerto Rico.

2. Si el pagaré original otorgado el 21 de noviembre de 2005 fue válidamente cancelado mediante la escritura de modificación de hipoteca otorgada el 29 de agosto de 2012.

3. Si la escritura de modificación de hipoteca de 2012 fue consentida o suscrita por el deudor original y, de no haberlo sido, cuál es su efeto jurídico sobre la obligación alegada.

4. Si existe una obligación líquida, vencida y exigible contra la sucesión del causante Luis Manuel Vázquez Negrón.

5. Si la hipoteca que BPPR pretendía ejecutar subsiste válidamente en ausencia de una obligación principal exigible.

6. Si el peticionario cumplió con los requisitos contractuales y legales de notificación previa, incluyendo la alegada mora y aceleración de la deuda.

7. Si los documentos en que el BPPR apoya su moción son auténticos, completos y admisibles en evidencia, o si han sido válidamente impugnados.

8. Si el descubrimiento de prueba ha concluido, o si, por el contrario, permanece inconcluso con objeciones pendientes de adjudicación y prueba esencial bajo el control exclusivo del peticionario.

9. Si procedía adjudicar sumariamente una reclamación cuando existían controversias sustantivas sobre la validez del instrumento negociable, la legitimación activa y la exigibilidad de la deuda.

El 10 de febrero de 2026, BPPR presentó su *Réplica a Oposición en Solicitud de Sentencia Sumaria*. Sostuvo que el Sr. Cotto Rodríguez incumplió con los requisitos establecidos en la R. 36.3 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3. Arguyó que se limitó a negar los hechos propuestos por el BPPR a través de los propios documentos que fueron presentados en su solicitud de sentencia sumaria. Insistió, en que cualquier duda no es suficiente para establecer una controversia material, más aún en ausencia de evidencia que sustente tal alegación. Además, indicó que se desprende de la escritura de modificación que dicha escritura no representa una novación de los términos previamente pactados.

El 17 de marzo de 2026, notificada el 19, el TPI emitió la *Resolución* recurrida en la que identificó que los siguientes cinco (5) hechos no estaban controvertidos:

1. El día 21 de noviembre de 2005, Luis Manuel Vázquez Negrón otorgó ante el Notario Enrique N. Vela Colón, mediante testimonio número 24683, un pagaré a favor de R.F. Mortgage and Investment Corporation o a su orden, por la suma principal de $92,000 más intereses desde esa fecha hasta el pago total del principal a razón de 6.625% de interés anual sobre el balance adeudado (el pagaré o instrumento). Además, el pagaré proveía para pagar recargos por demora equivalentes a 5.000% de la suma de aquellos pagos con atrasos en exceso de 15 días calendarios de la fecha vencimiento; y una cantidad equivalente a $9,200 por concepto de costas, gastos y honorarios de abogados en caso de reclamación judicial.

2. Para garantizar el pago de dicho pagaré se constituyó una hipoteca voluntaria mediante la escritura número 916 otorgada el día 21 de noviembre de 2005 ante el Notario Enrique N. Vela Colón (la escritura de hipoteca).

3. La escritura de hipoteca grava el bien inmueble que se describe a continuación (la finca o propiedad)

   DESCRIPCION REGISTRAL: SOLAR de terreno ubicado en el Barrio Santa Rosa del término municipal de Guaynabo, Puerto Rico, con un área superficial de 1,037.54 metros cuadrados, equivalentes a DOS MIL CUARENTA milésimas de cuerda. En el solar marcado con el número 10 en el plano de notificación; colinda por el Norte, Este y Oeste, con terrenos para para uso público y por el Sur, una parcela marcada con el número 9. En dicho solar hay una

edificación, la cual se describe a continuación. Edificación: Dos niveles donde el primer piso tiene garage para un automóvil, un medio baño y un área de laundry, no tiene lozas y es piso de cemento, con una puerta al norte que da acceso a escalera de 12 escalones con descanso que conduce a la segunda planta. La segunda planta consta de 3 habitaciones con sus closets todos con puertas de metal. La sala comedor-cocina, tiene puerta de cristal sliding door que da un balcón de lozas negras de 11 pies de largo por 4 de ancho, mirando al Este. Su sala-comedor cocina se dispone en espacio abierto, siendo la sala-comedor de 11 pies de ancho por 18 de largo y mirando al lado Oeste, pero continuo un espacio para cocina de 8 por 5 pies hay un gabinete de pared y otro donde irá la estufa. Esta área no tiene equipos a excepción de los gabinetes antes mencionados. De la sala se conduce a las habitaciones y al solo baño del inmueble por un pasillo de 11 pies de largo por 3 1/2 de ancho. El baño no tiene bañera, es una regadera ducha y un inodoro con 4 pies de ancho y 6 de largo; con una media ventana tipo 'Miami'. Los pisos de la parte superior están en lozas italianas negras y así los bordes combinando con los pisos. Hay en dicha planta 3 habitaciones; la más amplia tiene 10 pies por 11 pies y su closet con puertas de metal y tiene 4 ventanas tipo Miami; las habitaciones número 2 y 3 de 10 pies por 11 pies con closet y abanico de techo y de 7.5 por 8 pies, respectivamente. Algunas ventanas están protegidas por rejas pero no en su totalidad. Esta construcción es totalmente en cemento y hormigón, vivienda para una sola familia. Inscrita al folio 173 del tomo 1330 de Guaynabo, finca 18977 del Registro de la Propiedad de Guaynabo.

4. La finca o propiedad antes descrita consta inscrita al folio 220 del tomo 407 de Guaynabo, Registro de la Propiedad de Guaynabo, finca número 18977.

5. La hipoteca consta inscrita al folio 173vto. del tomo 1330 de Guaynabo, Registro de la Propiedad de Guaynabo, finca número 18977.

No obstante, indicó que existía controversia sobre los siguientes hechos:

1. Si la hipoteca fue modificada mediante la escritura número 252 otorgada en San Juan, el 29 de agosto de 2012, ante el Notario Público Antonio R. Pavía Vidal, de la siguiente manera: En cuanto al principal que será $91,070.33 con intereses al 2.50% anual del pago mensual 1 al 60; luego al 3.50% anual del pago 61 al 72; luego al 4.50% anual del 73 al 84; al 5.50% anual del pago 85 a; 96; luego al 6.50% anual del pago 97 al 108 y luego al 6.625% anual de pago 109 al 140, su fecha de vencimiento será el 1ro de septiembre de 2052.

2. Si la hipoteca fue constituida para garantizar (a) el repago de la deuda evidenciada por el pagaré, (b) una suma equivalente a $9,200.00 para cubrir cualquier otro adelanto que se haga en virtud de la escritura de hipoteca, (c) una suma equivalente

$9,200.00 para cubrir intereses en adición a los garantizados por ley, y (d) una suma equivalente a $9,200.00 para cubrir costas, gastos y honorarios de abogado.

3. Si la parte demandante es la parte con derecho a exigir el cumplimiento del instrumento.

4. Si la parte demandada ha dejado de pagar las mensualidades vencidas desde el día 1 de junio de 2020 y en consecuencia, ha incurrido en el incumplimiento de la obligación de pagar en plazos mensuales el principal y los intereses según acordados.

5. Si la parte demandada de epígrafe adeuda al demandante las siguientes sumas: $81,018.56 en principal, más los intereses al 6.625% anual desde el día 1 de junio de 2020, así como los intereses acumulados y por acumularse a partir de esa fecha y hasta el total y completo repago de la deuda; cargos por demora equivalentes al 5.000% de todos aquellos pagos con atrasos en exceso de 15 días calendarios de la fecha de vencimiento hasta el total y completo repago de la deuda, $9,200.00, es decir, el 10% sobre el principal del pagaré hipotecario, para el pago de costas, gastos y honorarios de abogado como suma pactada a dichos efectos en el pagaré.

6. 6. Si BPPR ha realizado gestiones para obtener el pago de las sumas reclamadas resultandos infructuosos los mismos por lo cual ha declarado vencida la totalidad de la deuda.

Basándose en tales hechos, el TPI denegó la resolución sumaria del pleito solicitada por el peticionario. Inconforme, el 23 de marzo de 2026, BPPR sometió una *Moción de Reconsideración* en la cual reiteró que la modificación de la hipoteca es válida y vinculante. De igual forma, insistió en la inexistencia de una controversia material que impida la resolución del pleito. El 24 de marzo de 2026, notificada al día siguiente, el foro primario emitió *Orden* en la que se negó a reconsiderar.

En desacuerdo aun, el 21 de abril de 2026, el peticionario presentó el recurso de epígrafe y señaló la comisión de los siguientes errores:

(A) Erró el Tribunal de Instancia al declarar no ha lugar la solicitud de sentencia sumaria, a pesar de la parte demandante haber acreditado mediante prueba documental admisible, pertinente y no controvertida, la existencia de la obligación reclamada y el incumplimiento de la misma por la parte demandada, en estricto cumplimiento con los requisitos de la Regla 36 de Procedimiento Civil, y sin que mediara controversia real sobre hechos materiales que justificara la celebración de un juicio en su fondo.

(B) Erró el Tribunal de Instancia al declarar no ha lugar la solicitud de sentencia sumaria, a pesar de que la parte demandada no presentara evidencia alguna que generara una controversia real y sustancial, ni cumplir con las exigencias específicas de la Regla 36.5 de Procedimiento Civil, por lo que procedía, en derecho, dictar sentencia sumaria a favor de la parte demandante.

Atendido el escrito, el 24 de abril de 2026, emitimos *Resolución* mediante la cual le otorgamos un término a los recurridos para exponer su posición sobre el mismo. Habiéndose peticionado y obtenido extensión del plazo concedido para así hacerlo, el 18 de mayo de 2026 lo hicieron. Por consiguiente, con el beneficio de la comparecencia de todas las partes, damos por sometido el asunto y procedemos a atender el recurso, no sin antes exponer la normativa vigente aplicable a las controversias planteadas.

**II.**

*A.*

El vehículo procesal de *certiorari* permite a un tribunal de mayor jerarquía a revisar discrecionalmente las órdenes o resoluciones interlocutorias emitidas por una corte de inferior instancia judicial. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 195 (2023) al citar a *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021) y otros. La característica distintiva del recurso de *certiorari* descansa en la discreción encomendada a este Tribunal de Apelaciones para autorizar su expedición y adjudicar sus méritos. *Íd*. De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *BPPR v. SLG Gómez-López*, 213 DPR 314 (2023) y casos allí citados. Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho." *Íd*. Ahora bien, en los procesos civiles, la expedición del recurso discreción de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V R 52.1. *Allio v. Santiago Chardon,* 2026 TSPR 13, 217 DPR ___ que establece que este se expedirá cuando se recurra de una resolución u

orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo.[4]

De otro lado, el examen de estos autos discrecionales no se da en el vacío o en ausencia de otros parámetros. *800 Ponce de León v. AIG*, 205 DPR 163 (2020). Para ello, la Regla 40 de nuestro Reglamento establece ciertos indicadores a tomar en consideración al evaluar si se debe o no expedir un recurso de *certiorari*.[5] Estos criterios, pautan el ejercicio sabio y prudente de la facultad discrecional judicial. *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 712 (2019).

Nuestro Más Alto foro ha establecido que como regla general no se interferirá con las facultades discrecionales de los foros primarios, excepto en aquellas circunstancias en las que se demuestre que éstos: (1) actuaron con prejuicio o parcialidad; (2) incurrieron en un craso abuso de discreción, o (3) se equivocaron en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Rivera et al. v. Arcos Dorados et al., supra,* a la pág. 210 y casos allí citados. En lo pertinente, se ha definido la discreción judicial como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera." *Íd.,* al citar a *Bco. Popular de PR v. Mun. de Aguadilla*, 144 DPR 651, 657-658 (1997). Así pues, la discreción

---

[4] Además, y a modo de excepción, podremos revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia, cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. *Íd.*

[5] Así pues, según la citada regla, estos indicadores son: si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho; si la situación de hechos planteada es la más indicada para el análisis del problema; si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia; si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados; si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración; si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio; o si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. Véase, Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re. Aprob. Enmdas. Reglamento TA*, 2025 TSPR 141, 216 DPR ___ (2025).

no implica que los tribunales puedan actuar de una forma u otra en abstracción del resto del Derecho. *Íd.*

*-B-*

El mecanismo procesal de la sentencia sumaria establecido por la Regla 36 de Procedimiento Civil, tiene el propósito principal de facilitar la solución justa, rápida y económica de los litigios en los que no existen controversias genuinas de hechos materiales y, por consiguiente, resulta innecesaria la celebración de un juicio en su fondo. *Conklin v. Passalacqua*, 2026 TSPR 18, 217 DPR ____; *Negrón Castro y otros v. Soler Bernardini, et al.*, 2025 TSPR 96, 216 DPR ___, al citar a *BPPR v. Zorrilla y otro,* 214 DPR 329, 338 (2024). El discutido mecanismo emana de la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, y permite que cualquiera de las partes en un litigio solicite que el tribunal dicte sentencia por la vía sumaria a su favor, ya sea sobre la totalidad o cualquier parte de la reclamación solicitada. Sólo procede dictar sentencia sumaria cuando surge de manera clara que la parte promovida por la solicitud no prevalecerá bajo ningún supuesto de hechos. *Conklin v. Passalacqua*, *supra,* al mencionar a *Nieves Díaz v. González* Massas, 178 DPR 820, 848 (2010). Esto, pues si hay una disputa real y sustancial sobre la existencia de algún hecho material, el tribunal se debe apartar de la adjudicación sumaria. *Íd.*[6] Así pues, una moción de sentencia sumaria no procederá cuando: (1) existan controversias de hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o (4) no proceda como cuestión de derecho. *Íd.*

La Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, establece el contenido y los requisitos de forma que deben observarse, tanto en la

---

[6] A tales efectos, se consideran hechos materiales aquellos que potencialmente puedan afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Conklin v. Passalacqua*, *supra*, al citar a *Bobé et al. v. UBS Financial Services*, 198 DPR 6 (2017).

solicitud de sentencia sumaria presentada por la parte promovente, como en la oposición que pueda presentar la parte promovida. *León Torres v. Rivera Lebrón*, 204 DPR 20, 43 (2020). Así pues, conforme el inciso (e) de la aludida regla, procede dictar sentencia sumaria si de las alegaciones, deposiciones y admisiones ofrecidas, más las declaraciones juradas y cualquier otra evidencia presentada se acredita la inexistencia de una controversia real y sustancial sobre algún hecho esencial y pertinente.[7] Para que un tribunal dicte sentencia sumaria a favor del promovente, ésta deberá, además, justificarse por el derecho aplicable. *CSM v. ELA*, 2025 TSPR 78, 216 DPR _____, al mencionar a *Oriental Bank v. Caballero García*, 212 DPR 671, 679 (2023).

En cuanto a la revisión judicial de una determinación sobre sentencia sumaria, es meritorio señalar que los foros apelativos nos encontramos en la misma posición que el foro primario al evaluar la procedencia de una sentencia sumaria. *Conklin v. Passalacqua*, *supra.* Al ser así, estamos llamados a examinar el expediente *de novo* y verificar que las partes cumplieron con las exigencias pautadas por la Regla 36.3 de Procedimiento Civil, *supra. Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010 (2020). Para ello, es indispensable que analicemos tanto los documentos que se acompañan con la solicitud como los documentos en oposición para determinar si existe o no controversia de hechos. Si se concluye que los hechos materiales están incontrovertidos, entonces corresponde revisar si el foro primario aplicó correctamente el derecho. Claro está, debemos recordar que no podemos tomar en consideración evidencia que las partes no presentaron ante el TPI, ni adjudicar los hechos materiales en controversia, por ser una tarea que le compete al foro de instancia luego de celebrarse un juicio. *Meléndez González et al. v. M. Cuebas*, *supra,* pág. 118. Cabe destacar que, en el caso en que no existan hechos materiales en controversia, este Foro procederá a revisar *de*

---

[7] 32 LPRA Ap. V, R. 36.3(e).

*novo* si el TPI aplicó correctamente el Derecho. *Negrón Castro y otros v. Soler Bernardini, et al., supra,* al mencionar a *Fernández-Bernal v. RAD-MAN et al., supra*, pág. 338 y *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019).

*C.*

El Código Civil de 1930 establece en su Artículo 1042 que las obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos o en que intervenga cualquier género de culpa o negligencia. 31 LPRA sec. 2992.[8] De igual forma, el mencionado código en su Artículo 1044 dispone que las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes y deben cumplirse al tenor de estos.[9]

Nuestro ordenamiento jurídico reconoce que las obligaciones pueden modificarse: al variar su objeto o sus condiciones principales, al sustituir la persona del deudor, y al subrogarse un tercero en los derechos del acreedor.[10] Asimismo, establece las causas por las cuales las obligaciones quedarán extintas, reconociéndose entre estas la novación. A tales efectos, el Artículo 1110 del Código Civil de 1930 establece que las obligaciones se extinguen: por el pago o cumplimiento, por la pérdida de la cosa debida, por la condonación de la deuda, por la confusión de los derechos de acreedor y deudor, por la compensación y por la novación.[11]. Es menester mencionar que las partes pueden extinguir una obligación sustituyéndola completamente por otra o pueden limitarse a modificarla. *Miranda Soto v. Mena Eró,* 109 DPR 473, 479 (1980).

---

[8] Aunque al momento en que la *Demanda* de epígrafe fue instada el Código Civil de Puerto Rico de 1930 había sido derogado por la Ley Núm. 55 de 1 de junio de 2020, que aprobó el hoy vigente Código Civil de Puerto Rico de 2020, sin embargo, los hechos que dieron lugar a esta ocurrieron previo a que entrara en vigor este último código. Por lo tanto, citaremos aquellas partidas relevantes del código civil anterior, o sea el Código Civil de 1930, las que son aplicables a las controversias.
[9] 31 LPRA Sec. 2994.
[10] 31 LPRA sec. 3241.
[11] 31 LPRA Sec. 3151.

En cuanto a la novación, nuestro Tribunal Supremo ha dicho que esta consiste en la sustitución de una relación obligatoria por otra, destinada a extinguir aquella. *Mun. de San Juan v. Prof. Research*, 171 DPR 219, 243-244 (2007). La novación, como ha sido reconocido, incluye tanto la modalidad que tiene efectos extintivos, como la novación modificativa en virtud de la cual subsiste una obligación alterada. *PDCM Assoc. v. Najul Bez*, 174 DPR 716, 725 (2008) y casos allí citados.

La novación extintiva se configura cuando las partes lo declaran en forma terminante o cuando la intención de novar se deriva de la incompatibilidad absoluta entre la obligación original y la nueva. *Íd.,* al citar el Art. 1158 del Código Civil de 1930, 31 LPRA sec. 3242. Por su parte, la novación modificativa de una obligación se concreta cuando no existe la intención de extinguir una obligación y sustituirla por otra, o cuando media compatibilidad entre la obligación original y la nueva. *Íd.,* al citar a *United v. Villa,* 161 DPR 609, 619 (2004). O sea, "cuando quede patente el ánimo de cambio, pero no conste "la voluntad de que una [obligación] se extinga y otra nazca, entonces se entiende que subsiste la misma obligación, pero modificada."[12] Para la constitución de una novación modificativa, no es necesario encontrar la voluntad expresa de extinguir una obligación por otra. Empero, es imprescindible hallar un ánimo de cambio. De esta forma, al determinar si nos encontramos ante un supuesto de novación modificativa, es necesario interpretar la voluntad de las partes. Ello, debido a que la novación encierra un asunto de intención que debemos inferir de las circunstancias de cada caso y de la voluntad de las partes. (Énfasis nuestro). *Íd.,* a la pág. 726.

Cabe añadir que para que una obligación quede extinguida por otra que la sustituya, es preciso que así se declare terminantemente, o que la

---

[12] *PDCM Assoc. v. Najul Bez, supra.*

antigua y la nueva sean de todo punto incompatibles."[13] La incompatibilidad entre las obligaciones existe cuando la obligación anterior y la posterior al acto novativo pertenecen a tipos distintos o se ha transformado de naturaleza. La aludida incompatibilidad existe cuando hay alteraciones esenciales en la obligación, es decir, variación de las condiciones principales como el objeto o el precio del contrato. No hay novación, en cambio, cuando subsistiendo la obligación primitiva se dan facilidades para su cumplimiento, prórrogas o plazos fraccionados. *Íd.*, al citar a *Miranda Soto v. Mena Eró*, *supra*, a las pág. 479-480.

En *Marina Ind., Inc. v. Brown Boveri Corp.*, *supra*, a las págs. 73-74, el Tribunal Supremo de Puerto Rico rechazó la posición de que "puede efectuarse una novación extintiva cuando la partes tan solo se limitan a reproducir la misma obligación con algún cambio insignificante. A tales efectos, en *Teachers Annuity v. Soc. de Gananciales,* 115 DPR 277, 285-286 (1984) destacó que "la doctrina ha superado el rigor conceptualista que el Derecho romano impartió a la novación. Ayer la novación se concebía sólo como un medio de extinción de las obligaciones. Hoy, sin embargo, la admitimos con efectos más limitados, como es la simple modificación de la obligación."

*D.*

La hipoteca constituye un derecho real que garantiza una obligación pecuniaria por lo que sus rasgos principales son su carácter accesorio e indivisible, su constitución registral y que recae directamente sobre bienes inmuebles, ajenos y enajenables, que permanecen en la posesión de propietario. *Banco Popular de Puerto Rico v. Zorrilla Posada*, 214 DPR 329, 339 (2024) al citar a *Westerbank v. Registradora*, 174 DPR 779, 784 (2008). Tal derecho sujeta o vincula lo hipotecado a que eventualmente su titular

---

[13] *Mun. de San Juan v. Prof. Research*, a la pág. 244. Véase también, Art. 1158 del Código Civil de 1930, 31 LPRA sec. 3242.

pueda exigir la realización de su valor, así como tomar medidas para salvaguardarlo, en seguridad o garantía de la efectividad de alguna obligación dineraria. *BPPR v. Registrador*, 181 DPR 663, 673 (2011).

**III.**

La decisión interlocutoria recurrida en el recurso de epígrafe trata de la denegatoria de una moción dispositiva sometida al amparo de la Regla 36 de Procedimiento Civil, *supra,* por lo que está comprendida dentro de las situaciones en las cuales dicho recurso puede ser expedido. Según arriba mencionamos, el peticionario reclama que la negativa del TPI de conceder su solicitud de sentencia sumaria fue errada, pues tal cual demostró mediante alegaciones bien fundamentadas, sustentadas con evidencia, no existía una controversia material sobre ningún hecho del caso. Así pues, amparándose en los documentos que constan del expediente judicial, el BPPR niega que exista controversia alguna en cuanto a cada uno de los hechos que el TPI identificó como controvertidos.

Por su parte, en defensa de la decisión recurrida, Cotto Rodríguez asevera que en efecto existe controversias que impiden la resolución sumaria del caso, pues el caso plantea interrogantes sustanciales sobre el consentimiento, la naturaleza jurídica de los cambios introducidos y la legitimación para ejecutar un instrumento cuya vigencia está impugnada, que requieren la celebración de un juicio en su fondo. Mientras tanto, LVI sostiene que la hipoteca, como derecho real accesorio, no puede ejecutarse en ausencia de una obligación principal válida y que la documentación presentada por el peticionario levanta interrogantes sobre tal hecho.

Antes de explicar nuestra decisión, según nos ordena a hacer la normativa jurídica aplicable, hemos evaluado si la solicitud de sentencia sumaria que presentó BPPR cumple con los requisitos de forma que exige la Regla 36 de Procedimiento Civil, *supra*. Efectuado el examen, concluimos que así fue. En particular, del escrito se desprende una breve exposición de

las alegaciones de las partes, los asuntos litigiosos, la causa de acción sobre la cual se solicita la disposición sumaria, una relación concisa, organizada y en párrafos separados de aquellos hechos esenciales y pertinentes sobre los que propuso que no existe controversia en los que se hace referencia a la evidencia admisible en la que descansa la solicitud. Así, expone las razones por las cuales entiende debe dictarse sentencia en virtud del derecho aplicable que incluye y el remedio que solicita.

Similar conclusión no necesariamente podemos alcanzar en cuanto a la *Moción en Oposición a la Solicitud de Sentencia Sumaria (Sumac #19)* instada por Cotto Rodríguez. En su escrito, este no acompañó su escrito con documentación propia que demostrara la existencia de controversias de **hechos materiales**. Por el contrario, más allá de plantear que no procedía dictar sentencia sumaria pues el descubrimiento de prueba no había concluido, se limitó a argumentar que no podía dictarse sentencia sumaria pues, ante la incomparecencia del deudor original en la Escritura de Modificación, existía duda acerca del efecto que la modificación de hipoteca tuvo sobre la deuda original, la cual, aseveró quedó extinguida. Ahora, es hartamente conocido que la concesión de una solicitud de sentencia sumaria ocurrirá solamente cuando en derecho así proceda, por lo que procedemos a evaluar *de novo* los méritos del asunto ante nos a los fines de valorar si efectivamente existían controversias de hechos medulares que impedían la resolución sumaria del pleito como fue resuelto.[14]

Como mencionamos al exponer el tracto procesal que concluyó con la presentación del recurso de epígrafe, en la resolución recurrida, el foro primario estimó que no existían controversia de cinco (5) hechos. No obstante, declinó dictar sentencia sumaria al entender que existía controversia sobre seis (6) hechos, los que reproducimos a continuación:

> 1. Si la hipoteca fue modificada mediante la escritura número 252 otorgada en San Juan, el 29 de agosto de 2012, ante el Notario

---

[14] *Audiovisual Lang. v. Sist. Est. Natal Hnos.,* 144 DPR 563, 575 (1997).

Público Antonio R. Pavía Vidal, de la siguiente manera: En cuanto al principal que será $91,070.33 con intereses al 2.50% anual del pago mensual 1 al 60; luego al 3.50% anual del plago 61 al 72; luego al 4.50% anual del 73 al 84; al 5.50% anual del pago 85 al 96; luego al 6.50% anual del pago 97 al 108 y luego al 6.625% anual del pago 109 al 140, su fecha de vencimiento será el 1ro de septiembre de 2052.

2. Si la hipoteca fue constituida para garantizar (a) el repago de la deuda evidenciada por el pagaré, (b) una suma equivalente a $9,200 para cubrir cualquier otro adelanto que se haga en virtud de la escritura de hipoteca, (c) una suma equivalente a $9,200 para cubrir intereses en adición a los garantizados por ley, y (d) una suma equivalente a $9,200 para cubrir costas, gastos y honorarios de abogado.

3. Si la parte demandante es la parte con derecho a exigir el cumplimiento del instrumento.

4. Si la parte demandada ha dejado de pagar las mensualidades vencidas desde el día 1 de junio de 2020 y en consecuencia ha incurrido en el incumplimiento de la obligación de pagar en plazos mensuales el principal y los intereses según acordados.

5. Si la demandada de epígrafe adeuda al demandante las siguientes sumas: $81,018.56 en principal, más los intereses al 6.625% anual desde el día 1 de junio de 2020, así como los intereses acumulados y por acumularse a partir de esa fecha y hasta el total y completo repago de la deuda; cargos por demora equivalentes al 5.000% de todos aquellos pagos con atrasos en exceso de 15 días calendarios de la fecha de vencimiento hasta el total y completo repago de la deuda; $9,200.00, es decir, el 10% sobre el principal del pagaré hipotecario, para el pago de costas, gastos y honorarios de abogado como suma pactada a dichos efectos en el pagaré.

6. Si BPPR ha realizado gestiones para obtener el pago de las sumas reclamadas resultando infructuosos los mismos por lo cual ha declarado vencida la totalidad de la deuda.

Tras efectuar una evaluación *de novo* de la prueba documental que consta en el expediente judicial estamos convencidos de que tal conclusión es errada. De entrada, cabe destacar que los autos del caso contienen documentación que rebate los hechos identificados por el foro primario como controvertidos. En primer lugar, es meritorio señalar que la *Demanda* fue acompañada con copia del Pagaré suscrito por Vázquez Negrón el 21 de noviembre de 2005 endosado a favor de BPPR. Por tanto, y contrario a lo concluido por el foro primario, sí quedó demostrado que el peticionario es la parte con derecho a exigir su cumplimiento.[15]

---

[15] Destacamos que dicho documento también fue sometido en apoyo a la solicitud de sentencia sumaria como Anejo 5. También, lo produjo como Anejo 1 de la *Solicitud de*

Segundo, la *Certificación Y Declaración Jurada* que el peticionario sometió ante la consideración del TPI establece que la parte demandada adeuda desde el 1 de junio de 2020 la suma principal de $81,018.56 por concepto de principal, así como los intereses pactados acumulados y por acumularse desde dicha fecha, como los cargos por demora equivalentes al 5.000% de todos aquellos pagos con atrasos en exceso de 15 días calendarios de la fecha de vencimiento hasta el total y completo repago de la deuda; $9,200.00, es decir, el 10% sobre el principal del pagaré hipotecario, para el pago de costas, gastos y honorarios de abogado como suma pactada a dichos efecto. Por consiguiente, el mencionado documento- **que cabe destacar no fue impugnado de manera alguna por los recurridos**- evidencia la fecha desde la cual el acuerdo de pago fue incumplido, así como la deuda acumulada. Quedan pues mediante estos documentos derrotados los hechos 4 y 5 identificados como controvertidos por el foro primario.

Similar situación ocurre en cuanto al sexto de estos. Según el TPI, existía controversia en cuanto a si el BPPR realizó gestiones para obtener de Vázquez Negrón el pago de las sumas reclamadas y siendo estos infructuosos declaró vencida la deuda. Sin embargo, tal apreciación pasa por alto que la *Certificación Y Declaración Jurada* aludida en el párrafo anterior establece que así lo ha hecho. De esta forma, ignora que al replicar la oposición que Cotto Rodríguez presentó contra la solicitud de sentencia sumaria, el BPPR produjo copia de la carta del 2 de mayo de 2022, mediante la cual- en gestión de cobro- se reclamó que el préstamo hipotecario reflejaba atrasos desde el 1 de junio de 2020 y concediéndole treinta (30) días para el pago de los atrasos, que ascendían a la suma de $15,760.49.[16]

---

*Desestimación de Reconvención* que sometió el BPPR en el caso el 14 de agosto de 2024. Véase, SUMAC TPI, Entrada Núm. 65.

[16] Véase, Anejo 1 de la *Réplica a Oposición en Solicitud de Sentencia Sumaria* del BPPR, SUMAC TPI, Entrada Núm. 140.

Como hasta aquí puede apreciarse, los hechos antes señalados según identificados como controvertidos por el tribunal son contrarios a la prueba documental sometida por el BPPR, la que recalcamos no fue refutada por ninguno de los recurridos. Por tanto, resolvemos que no existe controversia en cuanto a estos.

Nos queda por atender y discutir los primeros dos hechos sobre los que el TPI encontró existía controversia. Entiéndase, si la hipoteca fue modificada mediante la Escritura número 252 y si la misma fue constituida para garantizar (a) el repago de la deuda evidenciada por el pagaré, (b) una suma equivalente a $9,200 para cubrir cualquier otro adelanto que se haga en virtud de la escritura de hipoteca, (c) una suma equivalente a $9,200 para cubrir intereses en adición a los garantizados por ley, y (d) una suma equivalente a $9,200 para cubrir costas, gastos y honorarios de abogado.

En cuanto a estos dos hechos, es menester señalar que el expediente judicial contiene la Escritura número 916 sobre Primera Hipoteca suscrita por Vázquez Negrón el 21 de noviembre de 2005, el Pagaré suscrito por este en la misma fecha, así como la Escritura Número 252 sobre Modificación de Hipoteca. Estos documentos con claros en cuanto a sus propósitos, términos y condiciones, por lo que no existe controversia en cuanto a su contenido.

Ahora, al final de la *Resolución Interlocutoria* recurrida, al aplicar el derecho a los hechos, el foro primario manifestó estar convencido de la existencia de controversias genuinas que debían dilucidarse en una vista en su fondo. Específicamente, dado el hecho de que el deudor original no compareció a la Escritura de Modificación pertinente al caso, si tal instrumento podía producir un efecto jurídico exigible respecto a la obligación original y frente a las partes hoy demandadas. Tal asunto, distinto a lo entendido por el tribunal, no es una controversia sobre hechos materiales que debían dilucidarse en una vista en su fondo. Por el contrario, trata sobre una controversia de derecho que venía obligado a resolver.

En el presente caso no existe controversia en cuanto al hecho de que, en el 2005, Negrón Vázquez Negrón suscribió un pagaré garantizado con la propiedad inmueble arriba descrita en la presente sentencia, ni acerca de los términos allí acordados. Tampoco existe duda acerca de que, en el año 2006, Vázquez Negrón cedió la propiedad hipotecada en favor de LVI por permuta mediante escritura número 78 otorgada el 23 de octubre de 2006.[17] Ni siquiera, sobre que el 29 de agosto de 2012, se suscribió una modificación de hipoteca con el fin de modificar los términos originales del pagaré que en su día había suscrito Vázquez Negrón como el entonces titular de la propiedad sobre la cual se estableció la hipoteca original.[18]

En esta última ocasión, Vázquez Negrón compareció como presidente de LVI, **quien en ese momento era el único titular de la propiedad cuya hipoteca iba a ser modificada.** Según sus propios términos, la escritura de modificación de hipoteca modificó y canceló **<u>parcialmente</u>** el principal del pagaré original. Específicamente, amplió la hipoteca origina en $929.67, así como la tasa de interés anual y los pagos mensuales por concepto de principal e intereses, los cuales se harían de la forma y por las cantidades allí detalladas. Además, se modificó el vencimiento del último pago. Con tales modificaciones, según dispuesto en la propia escritura de modificación, todas las demás condiciones quedarían en efecto y vigor sin cambios de naturaleza alguna, estableciéndose que la modificación no constituía una novación de los términos y condiciones previamente dictados.

El TPI ultimó que no procedía dictarse sentencia sumaria pues se desconoce el efecto jurídico que la incomparecencia de Negrón Vázquez

---

[17] Así surge de la Certificación de Propiedad Inmueble del 20 de junio de 2023 incluida como Anejo 1 de la *Moción en Solicitud de Sentencia* sometida por BPPR el 19 de noviembre de 2025.

[18] Conforme el propio legajo, Vázquez Negrón como deudor del préstamo solicitó la modificación, pues debido a una reducción de ingresos en el negocio Doctors Weigh Loss sus pagos se habían atrasado. Véase Anejo 4 de la *Solicitud de Desestimación de Reconvención*. SUMAC TPI, Entrada Núm. 65.

como individuo en la escritura de modificación de hipoteca tuvo para con dicho instrumento. A su juicio, para poder contestar dicha interrogante, es necesaria la celebración de un juicio. Discrepamos.

Según reseñamos, el Código Civil de 1930 contiene una disposición categórica que dispone que para que una obligación quede extinguida es preciso que así se declare terminantemente o que la obligación original y la nueva sean del todo incompatibles. Es mediante tal determinante declaración, o una incompatibilidad de las obligaciones, que se configura la novación extintiva.

En el presente caso la escritura de modificación conforme a sus propios términos no constituyó una novación extintiva pues así allí inequívocamente se plasmó. De la misma forma, no identificamos incompatibilidad alguna entre la obligación original y aquella modificada que pueda causar tal novación. Al contrario, nos parece que lo ocurrido en el presente caso constituye un ejemplo claro de una novación modificativa. Recordemos que, según citamos, al determinar si estamos ante un supuesto de novación modificativa, es necesario interpretar la voluntad de las partes, pues la novación encierra un asunto de intención que debemos inferir de las circunstancias de cada caso y de la voluntad de las partes.

El expediente judicial demuestra que Vázquez Negrón suscribió un pagaré garantizado mediante hipoteca. Igualmente revela que posterior a la constitución de la hipoteca original transfirió la titularidad del bien hipotecado a LVI (de la cual fungía como presidente) y que más tarde, por reducción de ingresos, acudió al BPPR en busca de una modificación de esta. Estas circunstancias particulares, al amparo del derecho aplicable aquí consignados, nos llevan a concluir que la incomparecencia de Vázquez Negrón en su carácter personal a la escritura de modificación no tuvo efecto jurídico alguno sobre la deuda original cuya ejecución el BPPR persigue, pues esta nunca dejó de existir.

A fin de cuentas, la transferencia de la titularidad del bien hipotecado no relevó al Negrón Vázquez de su obligación personal, pues si bien la novación que consiste en sustituirse un nuevo deudor en lugar del primitivo puede hacerse sin conocimiento de éste, no puede ocurrir sin el consentimiento del acreedor.[19] Además, y toda vez que el derecho real de la hipoteca es una obligación accesoria en garantía de la efectividad de alguna obligación dineraria, la escritura de modificación suscrita en el caso de autos tuvo el propósito de plasmar las modificaciones a los términos originales de la deuda a las que la propiedad hipotecada estaría sujeta, necesitándose solamente la comparecencia de su titular; en este caso de LVI.

En fin, y por todo lo aquí expresado, resolvemos que, contrario a lo concluido por el TPI, en el presente caso no existía controversia alguna de hechos medulares que impidieran la resolución sumaria del pleito. Por consiguiente, declaramos con Lugar la *Moción en Solicitud de Sentencia* instada en el presente caso por BPPR.

## IV.

Por los fundamentos anteriormente expuestos, revocamos la *Resolución* recurrida. En consecuencia, declaramos Con Lugar la *Moción en Solicitud de Sentencia* instada en el presente caso por BPPR y se devuelve el caso al foro recurrido para que se dicte sentencia conforme lo aquí resuelto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[19] Véase, Artículo 1159 del Código Civil de 1930, 31 LPRA sec. 3242.